1  DURIE TANGRI LLP
   CLEMENT S. ROBERTS (SBN 209203)
2  croberts@durietangri.com
   JOSEPH C. GRATZ (SBN 240676)
3  jgratz@durietangri.com
   MICHAEL A. FELDMAN (SBN 295780)
4  mfeldman@durietangri.com
   217 Leidesdorff Street
5  San Francisco, CA  94111
   Telephone:    415-362-6666
6  Facsimile:    415-236-6300

7  Attorneys for Plaintiff
   RINGCENTRAL, INC.
8

9                IN THE UNITED STATES DISTRICT COURT

10                FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12 RINGCENTRAL, INC.,                         Case No. 3:16-cv-04826

13              Plaintiff,                    **COMPLAINT AGAINST FONALITY FOR:**

14       v.                                   **(I) FRAUD ON THE UNITED STATES PATENT AND TRADEMARK OFFICE;**

15 FONALITY INC.,
                                              **(II) DECLARATION OF NO TRADEMARK RIGHTS;**
16              Defendant.

17                                            **(III) CANCELLATION OF TRADEMARK REGISTRATIONS; AND**

18
                                              **(IV)  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
19

20
                                              **JURY TRIAL DEMANDED**
21

Plaintiff RingCentral, Inc. ("RingCentral" or "Plaintiff"), by and through its undersigned attorneys, by way of Complaint against Fonality Inc. ("Fonality" or "Defendant"), alleges as follows:

## I. PARTIES

1. Plaintiff is a Delaware corporation with its principal place of business at 20 Davis Drive, Belmont, California 94002. Plaintiff's cloud-based communication and collaboration platform offers a comprehensive set of capabilities that unify voice, business messaging, team collaboration, video conferencing, and online meetings.

2. Defendant is a Delaware corporation having an office at 200 Corporate Pointe, Suite 300, Culver City, California 90230. Defendant competes with Plaintiff in the market for business telephone systems. Defendant may be served through its agent CSC, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 15 U.S.C. § 1119, 1120, 1121 and 28 U.S.C. § 1331, 1338 and 1367, and 2201.

4. Venue is proper in this district under 28 U.S.C. § 1391.

## III. INTRADISTRICT ASSIGNMENT

5. This is an Intellectual Property Action which is subject to district-wide assignment.

## IV. JURY DEMAND

6. Plaintiff demands trial by jury on all claims so triable.

## V. OPERATIVE FACTS

### A. Fonality's Fraud on the United States Patent and Trademark Office

7. On November 11, 2005, Fonality filed an application to register the trademark HUD with the United States Patent and Trademark Office ("USPTO").

8. In an office action dated June 2, 2006, the USPTO refused to register HUD on the ground that the term HUD was merely descriptive of a feature of the Fonality product:

> The acronym HUD stands for the phrase "HEADS-UP DISPLAY" (see attached acronym definition and page from the applicant's website). The phrase, Heads-Up Display or HUD, is defined as "any type of display that presents data without blocking the user's view" and is frequently used in conjunction with military aviation, commercial aviation, motor vehicle and

other applications (see attached encyclopedia article).  Therefore, the acronym HUD is merely descriptive of a feature of the applicants goods and/or services, namely, that the goods and/or services feature "display that presents data without blocking the user's view" (HUD).

9. Fonality responded to that office action on July 18, 2006, but did not address the USPTO's refusal to register the mark on the ground that it was merely descriptive of a feature of the Fonality product.

10. In an office action dated October 12, 2006, the USPTO issued a final rejection of the HUD mark as merely descriptive.

11. Fonality responded to that office action on November 27, 2006, requesting that the mark be listed on the "Supplemental Register" rather than on the "Principal Register," thereby implicitly conceding that the HUD mark was merely descriptive and was not a trademark.  The mark was thereafter listed on the Supplemental Register under Registration No. 3,203,117.

12. On March 25, 2015, Fonality once again applied to register the trademark HUD on the Principal Register under Application Ser. No. 86/576,695 and also applied to register the trademark HEADS UP DISPLAY under Application Ser. No. 86/576,674.  The prosecution history of those two applications is identical in all material respects, and those applications are discussed together below.

13. In an office action dated July 4, 2015, the USPTO refused to register HUD and HEADS UP DISPLAY on the ground that those terms were merely descriptive of a feature of the Fonality product:

> Registration is refused because the applied-for mark merely describes the purpose and function of applicant's goods and/or services.  Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1); see TMEP §§1209.01(b), 1209.03 et seq.
>
> A mark is merely descriptive if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the specified goods and/or services.  TMEP §1209.01(b); see In re Steelbuilding.com, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); In re Gyulay, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987).  Moreover, a mark that identifies a group of users to whom an applicant directs its goods and/or services is also merely descriptive.  TMEP §1209.03(i); see In re Planalytics, Inc., 70 USPQ2d 1453, 1454 (TTAB 2004).
>
> Two major reasons for not protecting descriptive marks are (1) to prevent the owner of a descriptive mark from inhibiting competition in the marketplace and (2) to avoid the possibility of costly infringement suits brought by the trademark or service mark owner.  In re Abcor Dev. Corp., 588 F.2d 811, 813, 200 USPQ 215, 217 (C.C.P.A. 1978); TMEP

> §1209. Businesses and competitors should be free to use descriptive language when describing their own goods and/or services to the public in advertising and marketing materials. See In re Styleclick.com Inc., 58 USPQ2d 1523, 1527 (TTAB 2001).
>
> The Examining attorney is aware that applicant has applied for the mark based on Section 2(f) acquired distinctiveness. However this mark is so descriptive that a high level of evidence will be required for registration under Section 2(f). See a random sampling of the proposed mark being used in a descriptive term from Google.

14. On October 23, 2015, counsel for Fonality sent a letter to John Marlow, General Counsel of RingCentral. That letter is attached hereto as **Exhibit A**. In that letter, Fonality indicated that it was aware of RingCentral's use of the terms HUD and "head up display" in connection with a feature of RingCentral's product similar to the "HEADS UP DISPLAY" feature of Fonality's competing product, and demanded that RingCentral cease using that term.

15. On November 2, 2015, counsel for RingCentral sent a responsive letter to counsel for Fonality. That letter is attached hereto as **Exhibit B**. In that letter, RingCentral indicated that the terms HUD and "head up display" are generic, and declined to cease using those terms.

16. At least as of November 2, 2015, Fonality was on notice that RingCentral was using the terms HUD and "head up display" in connection with RingCentral's products and services, which provide similar functionality to the "head up display" feature of Fonality's competing product, and that RingCentral did not intend to cease use of those terms.

17. RingCentral has used the terms HUD and "head up display" continuously in connection with its products and services at least since June 4, 2015, and continues to use those terms today. *See, e.g.*, https://www.ringcentral.com/office/features/desktop-apps/overview.html:

**Head-up display (HUD)**

- Single interface to view up to 100 user extensions with real-time presence, and efficiently manage multiple incoming calls from the desktop.
- Easily add, delete, and drag-n-drop extensions within the display; the list automatically synchronizes across RingCentral for Desktop and desk phones.
- Answer multiple calls, quickly transfer calls, add a caller to an existing conference, park calls, and pick up calls on behalf of other extensions.
- Efficient call monitoring directly within HUD.* Allow supervisors to listen in, coach staff, join calls, or take over the conversation.
- Communicate within seconds, sending text messages to anyone in your company.

18. Fonality did not make the USPTO aware of its correspondence with RingCentral, or of RingCentral's competing use of the terms HUD and "head up display."

19. Instead, Fonality made misrepresentations to the USPTO about whether others were using the terms HUD and "head up display" to refer to products other than Fonality's.

20. On December 15, 2015, after its exchange of correspondence with RingCentral, Fonality submitted a response to the USPTO's July 4, 2015 office action. That response contained at least two misrepresentations.

21. First, that response represented to the USPTO that:

> Applicant has already provided a plurality of screen shots of various Internet discussions where the mark was referenced directly by the public with reference to the applicant. Further there are no references by the public to similar goods and services using the mark by any other owner or entity. As far as the public is concerned, the claimed mark refers to the Applicant's products.

22. In fact, as of December 15, 2015, Fonality knew that similar goods and services were offered under the HUD and "head up display" by RingCentral. On information and belief, as of December 15, 2015, Fonality was aware that members of the public were in fact using the RingCentral "head up display" feature, and thus did not associate the term HEADS UP DISPLAY exclusively with Fonality's products.

23. Second, in its response Fonality represented to the USPTO that:

> according to 15 U.S.C. § 1052(f) continuous and exclusive use for a period of five years establishes a prima facie case of acquired distinctiveness.

4
COMPLAINT / CASE NO. 3:16-CV-04826

> Applicant has offered the prior registration on the supplemental register No. 3203117 which has been registered and in use for over 5 years.

24. In fact, as of December 15, 2015, Fonality knew that its use of the terms HUD and HEADS UP DISPLAY had not been "exclusive," because similar goods and services were offered under the terms HUD and "head up display" by RingCentral.

25. On December 21, 2015, the USPTO issued a final rejection of the registration for HEADS UP DISPLAY on the ground that it is merely descriptive. The USPTO said:

> Simply stating that consumers associate the mark with the applicant is not sufficient. A review of applicant's submissions does not support its claims. Much of the "evidence" submitted shows the proposed mark used in a way that does not indicate source. The Examining attorney submitted in the prior Office action evidence showing use of the term HEADS UP DISPLAY that is not associated with applicant.

The USPTO indicated that, in order to register the mark, Fonality would need to provide evidence showing that consumers associate the term HEADS UP DISPLAY with Fonality.

26. On April 15, 2016, Fonality submitted a Request for Reconsideration after Final Action, on the basis of which the USPTO allowed Fonality's application to register HEADS UP DISPLAY on the Principal Register. But that Request for Reconsideration after Final Action included misrepresentations, but for which the USPTO would not have allowed the application, as set forth below.

27. First, the Request for Reconsideration states that "The pending mark has been exclusively used by the Applicant in the relevant markets since October 2005." That statement is false, at least because RingCentral had been using the terms HUD and "head up display" for a competing product, and Fonality was aware of that conflicting use.

28. Second, the Request for Reconsideration states that "Over the period since inception, Applicant has spent over $45 million to promote and educate the public concerning the pending mark." On information and belief, that statement is either false or materially misleading, because, on information and belief, far less than $45 million is attributable to promotional efforts focused solely or primarily on the HUD or HEADS UP DISPLAY marks.

29. Third, Appendix A to the Request for Reconsideration states: "Searches in Google (performed 4/12/2016) for the Applicant's industry combined with the pending marks result with the first 7 results pointed to the Applicant and the 8th result directed to the non-competeing [sic] video game,

'Second Life.'"  In fact, however, the fifth search result set forth in that Appendix is the following:

> **Announcing the ConnectMeVoice Heads Up Display ...**
> www.connectmevoice.com/.../Announcing-the-ConnectMeVoice-Heads-...
> Dec 5, 2013 - This tool is used to allow users of our ConnectDirect (**Voip** phone system) ... Using a **heads up display** can be a convenient and cost effective ...

30. ConnectMeVoice has been using the term HEADS UP DISPLAY in connection with a product similar to the "HEADS UP DISPLAY" feature of Fonality's competing product since at least 2013.  On information and belief, ConnectMeVoice is unaffiliated with Fonality (or, in the alternative, Fonality's statement in the Request for Reconsideration that "[s]ales are all direct through the Applicant with no dilution of association through a distributor" is a material misrepresentation).

31. Thus, Fonality's statement that "the first 7 results pointed to the Applicant" is false.  But for that statement, the USPTO would not have allowed Fonality's registration because the USPTO would have understood that the evidence Fonality submitted contradicted its claim to exclusive use.

32. Fourth, Fonality represents that Appendix C to the Request for Reconsideration "is a record of common law enforcement rights for the pending marks."  That Appendix represents that Fonality's only enforcement action was taken against a competitor called "Lightspeed CLEC," which agreed to refrain from using the term HEADS UP DISPLAY.  That Appendix explicitly represents that "Throughout use of the pending marks, Applicant has been diligent in maintaining exclusive use."  Those representations are false, at least because RingCentral had been using the terms HUD and "head up display" for a competing product, had explicitly refused to cease using those marks, and because Fonality was aware of that conflicting use and refusal at the time the Request for Reconsideration was submitted on April 15, 2016.  But for those statements, the USPTO would not have allowed Fonality's registration.

33. Following allowance, Fonality's applications for HUD and HEADS UP DISPLAY were published for opposition on June 7, 2016.

34. On August 16, 2016, Fonality's counsel sent a letter to RingCentral's counsel, once again demanding that RingCentral cease its use of the terms HUD and "head up display" to refer to the head-up display feature of its products and services.  That letter is attached hereto as **Exhibit C**.  In that letter, Fonality demands compliance, and threatens that if RingCentral does not comply, Fonality "will have no

1  choice but to pursue additional legal remedies against RingCentral."

2  35.  As a result of the foregoing, an actual controversy has arisen and now exists between
3  RingCentral and Fonality as to the existence and nature of Fonality's rights in the terms HUD and
4  HEADS UP DISPLAY.

**B.   The Terms "HUD" and "Heads Up Display" Are Generic**

36.  A generic term is a term that the relevant purchasing public understands primarily as the common or class name for the goods or services.

37.  Generic terms are incapable of functioning as trademarks denoting source.

38.  "HUD" is an abbreviation for "head up display" or "heads up display."

39.  "Head up display" is a generic term for a display that allows a user to keep his or her eyes on his or her principal task while also receiving relevant information that the user would otherwise need to look down at another device in order to see.

40.  As one federal court has recognized, in the context of a customs case regarding the importation of a head-up display: "The use of the system eliminates the necessity of the pilot having to shift his eyes and constantly refocus them between instrument panel and vistas outside of the plane. Hence, the name 'head-up display' is frequently used to describe the system represented by the imported merchandise." *Librascope Div. of Singer-Gen. Precision, Inc. v. United States*, 76 Cust. Ct. 197, 199 (Cust. Ct. 1976).

41.  The Fonality "heads up display" or "HUD" feature is a display that allows a user to keep his or her eyes on his or her principal task (on his or her computer monitor) while also receiving relevant information that the user would otherwise need to look down at another device (his or her telephone) in order to see.

42.  The RingCentral "head up display" or "HUD" feature is a display that allows a user to keep his or her eyes on his or her principal task (on his or her computer monitor) while also receiving relevant information that the user would otherwise need to look down at another device (his or her telephone) in order to see.

43.  Attached hereto as **Exhibit D** is an excerpt from an article published in FLIGHT International magazine in December of 1968, using "head up display" as a generic term for a product

available from a number of different sources.

44. The generic use of the terms "HUD" and "heads up display" has been continuous from 1968 to the present.

45. At the time Fonality began using the term "heads up display" in connection with its heads up display, that term was already recognized by the purchasing public primarily as the common or class name for that type of display.

## VI. FIRST CLAIM FOR RELIEF: FRAUD ON THE UNITED STATES PATENT AND TRADEMARK OFFICE

46. RingCentral incorporates by reference the foregoing paragraphs.

47. Fonality made false representations of fact to the USPTO in connection with its applications to register HUD and HEADS UP DISPLAY. For example, Fonality represented to the USPTO that Fonality was the exclusive user of those marks in connection with the goods and services described in its application, when in fact at least RingCentral was also using those marks in connection with similar goods and services.

48. Fonality's false representations of fact were made knowingly. For example, Fonality made its misrepresentations after it had already discovered RingCentral's conflicting use and corresponded with RingCentral regarding that use.

49. Fonality's false representations of fact were material. For example, it was only after Fonality made its misrepresentations that the USPTO was convinced to allow the registrations for HUD and HEADS UP DISPLAY, where the USPTO had previously issued final rejections of those registrations.

50. Fonality intended to induce the USPTO's reliance on its false representations of fact by including them in its request for reconsideration and relying upon them in its arguments in favor of reconsideration.

51. Accordingly, this Court should enter declaratory judgment that Fonality has engaged in fraud on the USPTO; that any registration that issues to Fonality for HUD and HEADS UP DISPLAY is subject to cancellation based on fraud in the procurement; and, to the extent those registrations issue, should issue an order canceling those registrations.

**VII.   SECOND CLAIM FOR RELIEF: DECLARATION OF NO TRADEMARK RIGHTS**

52. RingCentral incorporates by reference the foregoing paragraphs.

53. Fonality lacks any common-law or statutory trademark rights in the terms HUD and HEADS UP DISPLAY, at least because those terms are generic or, in the alternative, because those terms are descriptive and lack secondary meaning.

54. Accordingly, this Court should enter declaratory judgment that Fonality lacks any common-law or statutory rights in the terms HUD and HEADS UP DISPLAY.

**VIII.   THIRD CLAIM FOR RELIEF: CANCELLATION OF TRADEMARK REGISTRATIONS**

55. RingCentral incorporates by reference the foregoing paragraphs.

56. Fonality is not entitled to register the HUD and HEADS UP DISPLAY marks, at least because those terms are generic or, in the alternative, because those terms are descriptive and lack secondary meaning.

57. Accordingly, this Court should enter declaratory judgment that any registration that issues to Fonality for HUD and HEADS UP DISPLAY is subject to cancellation because the marks are generic or, in the alternative that they are descriptive without secondary meaning; and, to the extent those registrations issue, should issue an order canceling those registrations.

**IX.   FOURTH CLAIM FOR RELIEF: VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

58. RingCentral incorporates by reference the foregoing paragraphs.

59. Fonality made material misrepresentations to the USPTO in derogation of a legal duty to refrain from such material misrepresentations.

60. Fonality asserted invalid trademark rights in correspondence with RingCentral.

61. By reason of Fonality's fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, Fonality had violated California Business and Professions Code § 17200 *et seq*.

**X.   PRAYER FOR RELIEF**

62. Wherefore, RingCentral respectfully requests that the Court grant relief as follows:

   a. That the Court enter declaratory judgment that Fonality has engaged in fraud on the USPTO;

   b. That the Court enter declaratory judgment that any registration that issues to

1  Fonality for HUD and HEADS UP DISPLAY is subject to cancellation based on fraud in the
2  procurement;
3        c.      That, to the extent registrations issue to Fonality for HUD and HEADS UP
4  DISPLAY, that the Court issue an order canceling those registrations on the ground of fraud in the
5  procurement;
6        d.      That the Court enter declaratory judgment that Fonality lacks any common-law or
7  statutory rights in the terms HUD and HEADS UP DISPLAY;
8        e.      That the Court enter declaratory judgment that any registration that issues to
9  Fonality for HUD and HEADS UP DISPLAY is subject to cancellation because the marks are generic or,
10  in the alternative, that they are descriptive without secondary meaning;
11       f.      That, to the extent registrations issue to Fonality for HUD and HEADS UP
12  DISPLAY, that the Court issue an order canceling those registrations on the ground that those terms are
13  generic;
14       g.      That the Court preliminarily and permanently enjoin Fonality from further
15  attempted enforcement of rights in HUD and HEADS UP DISPLAY, and from further fraud on the
16  USPTO in connection with those terms;
17       h.      For damages according to proof;
18       i.      That the Court award RingCentral its attorneys' fees and costs; and
19       j.      For such other and further relief as the Court deems just and proper.

Dated: August 22, 2016                             DURIE TANGRI LLP

                                                   By:       /s/ Clement S. Roberts
                                                          CLEMENT S. ROBERTS

                                      Attorneys for Plaintiff
                                      RINGCENTRAL, INC.